UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KESLER ENTERPRISES, INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST SERVICE; KAREN RUKLIC; DOUG BLADEK,<br><br>　　　　　Defendants. | Case No. 4:10-CV-169-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the Defendants' Motion to Dismiss (Dkt. 10). The Court heard oral argument on October 20, 2010, and took the motion under advisement. After fully considering the parties' briefing, the oral arguments of counsel and the full record the Court finds that the motion should be granted. Dismissal is appropriate a *Bivens* claim, like the one brought by the Plaintiff in this proceeding, may not be maintained against a federal entity or agency and may not be brought against the individual federal actors where there is an alternative remedy for the Plaintiff's alleged harms. Dismissal of the claim for injunctive relief is also appropriate because such relief is inappropriate absent a

finding, reached through the appropriate statutory review process, of repeated constitutional violations by a defendant.

## BACKGROUND

Plaintiff Kesler Enterprises is a contractor based in Darlington, Idaho. *Complaint at* ¶¶ 1,6 Dkt. 1. Defendants are the United States Forest Service; Karen Ruklic, a Forest Service Contracting Officer employed by the Nez Perce National Forest; and Doug Bladek, a Forest Service engineer also employed by the Nez Perce National Forest. *Id.* at ¶ 2-3. In 2007, Kesler, concerned by its failure to win contracting bids awarded by the Nez Perce National Forest when it believed itself to be the low bidder, began requesting a debriefing each time such an "anomalous" bid was awarded. *Id.* at ¶ 8-10. Kesler characterizes the reasoning given by the Forest Service in the debriefings as "strained," lacking "substantial basis at all in the law." *Id.* at ¶ 11.

In 2008, Kesler was awarded a contract referred to as the Whitman Creek Restoration. *Id.* at ¶ 12. In early 2009, Kesler failed to win the Crooked River Road 233 Surfacing Project despite bidding lower than the company to whom the contract was awarded. *Id.* at ¶ 13. The requested debriefing, authored by Ms. Ruklic, listed six specific reasons Kesler did not win the bid. *See Crooked River Road 233 Surfacing Project Debriefing*, Dkt. 10-11. These reasons were: (1) an overly optimistic estimated

hauling rate of 250 tons per day; (2) the bid's failure to indicate whether a stockpile would be created for the aggregate project material, or if the material would be hauled directly to the site; (3) the proposed equipment was inadequate for the project requirements; (4) the failure of the bid to explain adequately how a specific bridge affected by the project would be reinforced; (5) the listing of crew members already working in the Whitman Creek Restoration, which had a firm, pending deadline; and (6) the bid's failure to provide relevant experience and certifications of all crew members. *Id.*

Believing the explanations provided in the debriefing were "strained," Kesler filed a formal protest of the Crooked River decision with the Government Accountability Office on July 11, 2009. *See Complaint, supra,* at ¶ 15; *GAO Protest*, Dkt. 10-11. Kesler also sent a letter of complaint to United States Senator Mike Crapo. *Id.* at ¶ 16.

On August 25, 2009, Mr. Bladek filed a Notice of Noncompliance listing Kesler's unfulfilled contractual obligations on the Whitman Creek Restoration. *See Work Order and Notice of Noncompliance.* Dkt. 10-6. The same day, Kesler received an order from Ms. Ruklic suspending work on the Whitman Creek Restoration. *See Notice to Proceed, Suspend, or Resume Work Order*, Dkt. 10-7. On September 1, 2009, Ms. Ruklic sent Kesler a Cure Notice specifically listing the steps necessary to obtain a lifting of the

suspension order. *See Cure Notice*, Dkt. 10-8. In a responsive letter, Kesler listed the roads it would fix, stated its belief that the suspension was "unlawful and unjustified," and asked for reimbursement of $2,000 per day of suspension. *See Kesler Letter*, Dkt. 10-9. Ms. Ruklic denied Kesler's reimbursement request. *See Ruklic Letter of September 25, 2009*, Dkt. 10-10.

On October 23, 2009, the GAO denied Kesler's protest in a five-page opinion that detailed the reasons Kesler's Crooked River bid was not improperly denied. *See GAO Decision*, Dkt. 10-12.

Kesler alleges that all unspecified bids it lost from 2007 to the present constituted retaliation for Kesler's request for debriefings. *See Complaint, supra*, at ¶ 21. More specifically, Kesler alleges that its failure to win the Crooked River bid and the order suspending work on the Whitman Creek Restoration constituted retaliation for its debriefing requests and letter to Senator Crapo. *Id.* at ¶ 22.

Kesler filed its Complaint in this matter on March 31, 2010. Kesler alleges four causes of action: (1) the order suspending work on the Whitman Creek Restoration constituted retaliatory conduct chilling Kesler's constitutional right to seek redress of grievances; (2) the failure to award Kesler bids, including the Crooked River project, when it believed itself to be the low bidder constituted retaliatory conduct chilling

Kesler's constitutional right to seek redress of grievances; and (3) a request for a presumably permanent injunction enjoining Defendants from engaging in further retaliatory conduct chilling Kesler's constitutional right to seek redress of grievances. *Id.* at ¶¶ 23-39.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## ANALYSIS

Kesler seeks monetary damages from federal employees for alleged violations of its constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). However, a *Bivens* action may not be maintained against a federal agency, *F.D.I.C. v. Meyer,* 510 U.S. 471, 486 (1994); therefore, the Court need only concern itself with the allegations insofar as they relate to Defendants Ruklic and Bladek.

*Bivens* held that the victim of a Fourth Amendment violation by federal officers had a claim for damages, and in subsequent years the Supreme Court has recognized two more nonstatutory damages remedies, the first for employment discrimination in violation of the Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979), and the second for an Eighth Amendment violation by prison officials, *Carlson v. Green*, 446 U.S. 14 (1980).

The decision to recognize a new *Bivens* remedy requires a two-step analysis. First, it must be determined whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. Second, even in the absence of an alternative process or remedy, careful consideration of the consequences of creating a new remedy must be considered: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special

factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (internal citations omitted).

The Supreme Court has instructed that a *Bivens* action does not lie where a comprehensive federal program, with extensive statutory remedies for any federal wrongs, shows that Congress considered the types of wrongs that could be committed in the program's administration and provided meaningful statutory remedies. *See Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). Even "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Id.* at 421-422.

Assuming for purposes of this motion that Kesler suffered retaliation at the hands of Defendants Ruklic and Bladek for its debriefing requests and letter to Senator Crapo, a *Bivens* remedy is not appropriate because Congress has created statutory remedies sufficient to redress the harms Kesler alleges.

### 1. Suspension of the Whitman Creek Restoration Project

Kesler alleges that the suspension of its work on the Whitman Creek Restoration was retaliatory and chilled its First Amendment right to petition the Government for redress of grievances.

Kesler has an adequate statutory mechanism to pursue its claim that its work was

improperly suspended.  The Whitman Creek Restoration contract incorporates Federal Acquisition Regulation 52.233-1 (48 C.F.R. § 52.233-1).  *See Whitman Creek Restoration Contract*, pgs. 59-62, Dkt. 10-2.    48 C.F.R. § 52.233-1(a) renders the underlying contract subject to the Contract Disputes Act, 41 U.S.C. §§ 601-613.  Under the CDA, all claims are first submitted to the contracting officer, who must issue a decision in writing. 41 U.S.C. § 605.  After the contractor receives notice of the contracting officer's decision, it may appeal the decision within 90 days to the agency board of contract appeals.  41 U.S.C. § 606.  The members of that board are selected in the same manner as administrative law judges.  Review of the board's decision is by the Court of Appeals for the Federal Circuit.  41 U.S.C. § 607(g)(1)(A).  In the alternative, a disgruntled contractor may, within twelve months of receiving the contracting officer's decision, file a direct action in the Court of Federal Claims.  41 U.S.C. § 609(a)(1).  The Court of Federal Claims then has jurisdiction to render judgment on any claim arising under the CDA, including disputes concerning contract termination, rights in property, compliance with cost accounting standards, and other non-monetary disputes on which a contracting officer has issued a decision.  28 U.S.C. § 1491(a)(2).

In *Janicki Logging Co. v. Mateer*, 42 F.3d 561 (1994), the Ninth Circuit held that the availability of a remedy under the CDA obviated any need for a *Bivens* remedy in a

case factually similar to the one before the Court. In that case, a logging company was awarded a contract to log certain Forest Service lands. Subsequent discovery of the presence of endangered owls on the land led the Forest Service to unilaterally terminate portions of the contract. The logging company brought a *Bivens* action against the Forest Service contracting officer, alleging that its substantive due process rights were violated by the partial termination of its contract. The Court offered the following observation in justifying its decision not to recognize a claim under *Bivens* in that situation:

> "The simple fact is that Congress has created a complete scheme through which Janicki could have obtained all of the damages it now claims. It had a contract which was expressly made subject to the CDA . . . there was neither need nor reason for a *Bivens* remedy. Janicki should have been content with the CDA remedy."

*Id.* at 565.

The Court is not persuaded by Kesler's argument that his claim of an unconstitutional *mens rea* – retaliation – on the part of the contracting officer is not a contractual claim and is therefore not subject to the CDA. By its terms, the CDA encompasses "[a]ll claims by a contractor against the government relating to a contract"; no exception is made for claims alleging unconstitutional conduct by a contracting officer. The Court is persuaded that when Congress indicated that "all claims by a contractor against the government relating to a contract" were to be resolved according to the CDA, it meant precisely that – "all claims." Any other view has the potential for

MEMORANDUM DECISION AND ORDER - 11

abuse.  It would be a simple exercise for contractors to convert a contract claim into a constitutional one by simply characterizing as unconstitutional the contracting officers motivation  for the termination or supension of a contract.    For example, if a contract is suspended due to a contractor's alleged failure to meet a deadline, a challenge to this decision is clearly governed by the CDA; alleging that the suspension or breach is based on an unconstitutional *mens rea* does not wrest jurisdiction to resolve a dispute from the Court of Federal Claims under the CDA and bestow it upon the District Court under *Bivens*.  See *Janicki Logging*, 42 F.3d at 565 ("[T]rue core" of *Bivens* claim that Forest Service employee violated a plaintiff's substantive due process rights in partially terminating logging contract was breach of contract); *Western Radio Services v. United States Forest Service,* 578 F.3d 1116, 1125 (9th Cir. 2009) (alleged retaliatory intent behind Forest Service inaction irrelevant where adequate statutory remedy obviating necessity of *Bivens* remedy available).  If Kesler's work was suspended for any improper reason, including retaliation, the CDA is sufficient to provide relief.

Congress, through the CDA, has provided Kesler with an adequate statutory mechanism by which its claim of unjustified suspension of the Whitman Creek Restoration project may be heard, rendering a *Bivens* action against Defendants Ruklic and Bladek inappropriate.

2.     **Failure to Win Bids**

Kesler alleges that its failure to win bids since 2007, including the Crooked River bid, is due to retaliation against it for engaging in constitutionally protected speech. For the same reasons discussed above, this claim fails.

The Competition in Contracting Act of 1984, 31 U.S.C. §§ 3551-56, the Administrative Dispute Resolution Act, 28 U.S.C. §§ 1491(b)(1)-(4), and Federal Acquisition Regulation 33.103, 48 C.F.R. § 33.103, all provide a statutory mechanism under which a contractor may protest against its failure to win a bid. Kesler did, in fact, appeal the Forest Service's denial of its Crooked River bid to the Government Accountability Office, and this protest was denied. This protest and denial demonstrates the proper functioning of an administrative appeals process; Kesler has not alleged that the GAO's denial of its protest was retaliatory conduct.

Kesler again tries to maneuver outside Congress' statutory framework by alleging an unconstitutional *mens rea*. For the Court to rule on Kesler's claim, it would have to determine whether the detailed, technical reasons given by the Forest Service in its debriefing and the GAO in its denial of Kesler's protest were pretextual and whether its true motivation was retaliatory in nature. Such an inquiry, however, would be a consideration of the merits of the bid, thereby usurping the statutory framework for bid protests. If Kesler's bid was denied for any improper reason, including retaliation, the statutory scheme in place is sufficient to provide relief.

Congress has provided Kesler with an adequate statutory mechanism to assert its claim that its bid on the Crooked River project was unjustifiably denied. Accordingly, a *Bivens* action against Defendants Ruklic and Bladek is inappropriate.

### 3. Injunctive Relief

Kesler argues that a pattern of unconstitutional, retaliatory conduct by a rogue federal officer would go unpunished under the existing regulatory schemes, as any remedy gained thereunder would not impact the contracting officer personally and, therefore, could not prevent continued violations. The Court is unpersuaded for two reasons. First, it puts the cart before the horse. Repeated violations of constitutional rights justifying injunctive relief would need to first be established through the appropriate statutory mechanism. Only after a pattern of unconstitutional conduct had been established would injunctive relief be appropriate. Second, for the Court to act before a clear pattern of repeated violations has been shown, would unduly interfere with the actions of the contracting federal agency, including its ability to monitor the activities of its contracting officers and to take disciplinary action in the appropriate case.

### 4. Qualified Immunity

The Court need not consider the issue of qualified immunity because no constitutional violation occurred.

## CONCLUSIONS

A *Bivens* action may not be maintained against a federal entity or agency. Such a claim may not be brought against individual federal actors when there is an alternative, existing process for protecting a plaintiff's rights. Because a sufficient statutory process exists through which Kesler may assert its claims, a *Bivens* remedy is inappropriate in this case. Injunctive relief is inappropriate absent a finding, reached through the appropriate statutory process, of repeated constitutional violations by a defendant.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss (Dkt. 10) is **GRANTED**.

2. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: **November 4, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge